, Donald J. Trump et al, at balance. Mr. Norris, for the at balance. Mr. Letter, for the APOE, Committee on Ways and Means, United States House of Representatives, Mr. Sinstad, for the APOE, U.S. Department of Treasury et al. Mr. Norris, good morning. Please proceed. Good morning, Judge Henderson. May it please the court. My friend, Mr. Letter, and I have litigated four of these cases together. We've litigated whether the House can get President Trump's accounting records, his banking records, his state tax returns, and now his federal tax returns. But none of those other cases were decided on a motion to dismiss. This one shouldn't have been either. The key question in these cases is whether the committee has a legitimate legislative purpose. If we didn't plausibly allege a non-legislative purpose here, then no one ever could. As we thoroughly explained in our pleading, committee members stated non-legislative purposes for obtaining President Trump's tax returns over 150 times. Chairman Neal himself admitted that his stated legislative purpose was a post hoc rationalization made for litigation, and the United States federal government for two years formerly concluded that his purpose was exposure for the sake of exposure. These allegations would be sufficient. Is it not possible that a committee or an actor, an Article 1 actor, could have a legislative purpose and another purpose? Would that not be possible to have more than one purpose? That is possible, Judge Sintel. Does that disenchant their legislative purpose if they have some other purpose? Does that throw out the value of their legislative purpose? Judge Sintel, that assumes that we pleaded that they had two purposes, but our factual pleadings are that they had one purpose. I understand that. I'm assuming no such thing. I'm saying your pleading may not carry the ball for you because there may be a legislative actor who has two purposes. You have one, and I'm asking you, why isn't it possible that they have two? It's not possible because we've alleged as a factual matter that they have one, and the government concluded— Your allegations are not binding on them or anybody else or the court. You allege one purpose, but that doesn't mean they don't have two purposes, does it? I think it does. That's a factual allegation that the court has to accept as true at the pleading stage. But, Judge Sintel, even if that was a competing interpretation, you also have to construe everything in our favor at the pleading stage. Back up a moment. That's not just a factual—that's a mixed question of fact and law about the two purposes, and I do not see why the court would be bound by that. We would not have to assume the truth, would we? I disagree with that. I think purpose is a factual question. But, Judge Sintel, a couple other answers, if you don't agree with me on that, is we have plausibly alleged that there was only one purpose. It was an illegitimate purpose because that's what the federal government concluded. That's what Chairman Neal said. That's what all of his colleagues said over and over hundreds of times, both before and after the request was made. But the case law also does somewhat contemplate the situation that you're talking about. Kilbourn v. Thompson, the very first case in this area, asks what the gravamon of the request is. And cases like McGrain and Berenblatt ask, what is the primary purpose? Or was there an illegitimate purpose that was affirmatively avowed? So the case law does contemplate the situation where they may have had two purposes. And it says Congress still loses if one of the affirmatively avowed purposes was illegitimate, or if the illegitimate purpose was driving the ship instead of the legitimate legislative purpose. And that's what we think is happening here, Judge Sintel. But more importantly, that's pretty standard talk for a legitimate legislative purpose test. This is not a standard case. Everyone here agrees that the committee's demand for President Trump's tax information Counsel, you say that this case shouldn't have been decided on motion to dismiss. How should it have been decided with respect to the question of determining what the legislative purpose was? There's supposed to be some discovery on that. You're supposed to be able to take depositions of the chairman of the House Ways and Means Committee. What procedural irregularity are you complaining about? Sure, Judge Wilkins. Well, I was about to mention that this case implicates the separation of powers. So the legislative purpose test is subject to heightened scrutiny where the Supreme Court has said the committee has to come forward with evidence about what it's doing. So this is a uniquely inappropriate case for a motion to dismiss. But I understand your question. And the right to discovery here is limited because we can't get discovery normally of Congress. They have legislative immunity, but it's not non-existent. And I think Judge Bates's opinion in the Jewish war veterans case explains this exactly right, which is there are things that are not protected by legislative privilege, but that do bear on purpose that we could get our hands on. For example, communications between the executive branch and the committee are not privileged, as Judge Bates explains. And they would shed light on our First Amendment claim, for example, in terms of how much influence did the committee have over the government's decision? It would also bear on what accommodation efforts, if any, were attempted by the government, which speaks to whether this satisfies heightened scrutiny or not. Our pleading is fairly robust in the number of statements from committee members and Chairman Neal about their purpose, but we don't have them all. We could also get their public statements, which are not protected by legislative privilege. And we could also get what happened. So there was a sit-down between the IRS and the committee to explain the presidential audit process. We're not sure the full extent of what the committee already knows about the process based on its communications and accommodation efforts with the executive branch. We could get that in discovery as well, which speaks directly to heightened scrutiny. The district judge debated between two tests for purposes of this case, the Nixon test against the Major test. What do you understand those two tests to be? We understand our position is that this court should apply Mazars. Mazars explains. Tell me what you understand each of those tests to be and then come to your position. Sure. Mazars has four requirements that it's a heightened version of the legitimate legislative purpose test for when Congress's demands implicate the separation of powers. It asks, is this request justified by the significant step of involving a president justified, or can you get this information from other sources? It asks whether the request has been specifically articulated and whether it's supported by evidence. It asks whether it's broader than reasonably necessary. And it asks whether it imposes undue burdens on the presidency. And any one of those requirements is violated. The committee loses and can't make the demand. That's Mazars. The Nixon versus GSA test. Our position, and I don't mean to question the premise of your question, but our position is that test doesn't possibly make any sense in this context. Just say what the test is you're understanding, what you understand the test to be. The part of Nixon versus GSA that Judge McFadden relied on is the test for when a statute violates Article Two. And the test is you ask how much it intrudes on the presidency and you weigh that against how much of a congressional interest is at stake. And you weigh Congress versus the president and you balance it out, figure out who wins. But our position is that Nixon versus GSA is it's just the Youngstown Steel test. It goes back to Justice Jackson. It's the general test for when you are weighing an Article Two challenge to a statute. It has nothing to do with the request from Congress. It has nothing to do with the fact that Nixon was a former president. None of that applies. Nixon was making an argument than any citizen can make that the statute there was unconstitutional because it burdened the sitting president's executive power. This case is different. This is a congressional request. The test for congressional requests has always been the legitimate legislative purpose test and Mazars tells you how to apply that here. And if I could just talk about how to apply Mazars to this case. We think every step of the Mazars test is violated by this request. But I'll say we're at the pleading stage. So what the question is, did we plausibly allege a claim that this request will violate heightened scrutiny? And we think we did for several reasons. This request does not the committee's legislative stated legislative purpose does not justify the significant step of involving a president. The committee, I think Judge McFadden was exactly right that you have to figure out what type of legislation the committee is allowed to be considering here. So it has to be legislation that this request would tell the committee something about. And that legislation has to be constitutional. The core piece of legislation that the committee has used in this case is that they want to codify the presidential audit program. They want to pass a statute that says the IRS has to regulate or has to audit the president. And here's how they have to do it. But Judge McFadden was exactly right that that statute would be unconstitutional. You can't tell subordinates of the executive branch that they have to investigate the head of the executive branch against the executive branches against the head's wishes. That's unconstitutional. So what Judge McFadden said is the statutory litmus test here are laws that don't require the IRS to audit presidents, but they just regulate the process by by funding the IRS and its ability to regulate presidents or by increasing the number of staff they have available. But those don't justify a detailed request for specific individual tax returns and audit files of a president. The committee, the presidential audit process itself is already written down in the internal revenue manual. And my friends will tell you, well, some parts of that manual are not followed anymore, but they conveniently never tell you which ones those are, why they matter, if they're significant at all. And the IRS, we know from two declarations that they submitted in this case at docket 44-4 and 44-3, that there was a three and a half hour briefing between the IRS and the committee telling them exactly what they wanted to know about the contours of the presidential audit program. Now, if that briefing was insufficient, we're never told how it was insufficient and we're never told why there was not a follow up request under the Biden administration. Are you contending that a valid legislative purpose has to be the purpose to pass a bill or to introduce a bill? It has to be. And it can't be oversight? It can't be oversight in a vacuum. It has to be to study legislation that would be constitutional if passed. And I say oversight in the vacuum because we know it can't be exposure for the sake of exposure. That's very clear. No, I'm saying if there is an audit program and Congress putting aside President Trump's tax returns, Congress issues a request for information. And it's for the purpose of oversight of whether the audit program is operating properly. Would that request be consistent with a valid legislative purpose? I think Judge Wilkins stated just like you stated it, that's too unclear and nonspecific to satisfy heightened scrutiny. The Supreme Court in Mazars said because this is an elevated test, we want Congress to adequately identify what it's doing with specificity and not use vague and loosely worded explanations. And that's because you're dealing with a president. The committee says we're looking at a president specific legislation here. President specific legislation is a constitutional minefield. They need to explain what they're doing so we can assess whether the information will tell them anything relevant and whether the bill they're considering would be constitutional. So I'll give you an example. They claimed that one of the things Judge McFadden said they might be able to legislate is what's the staffing situation for presidential audits. But if my friends are considering a bill that would prevent the president from removing an IRS officer who's auditing his tax returns, that presents a serious constitutional questions. The Supreme Court has addressed removal cases a series of times in recent years, but we don't know stated at that level of generality. The only specificity in this request is that they want to codify the program. And we've explained, Judge McFadden explained why that type of legislation would violate Article 2. And no one defends its constitutionality here. It's all about funding and staffing. And those types of predictive broad policy judgments just are not enough to involve a president. And if I could give another example, the idea that this is about the IRS's budget is just... How are they not, you're saying that they're not specific enough to involve a president, but the audit program is specifically directed to presidential tax returns and has been around for 50 years? Correct. But the question is, what do they want to do about the audit program in some specific sense? I mean, they don't have to have it exactly direct. They don't have to have the text of a draft bill or anything like that. But they've got to give this court a sense of the legislation that they're thinking about and whether it would be constitutional. And when you regulate presidents, you run into all sorts of problems. And so Judge McFadden backed away from that problem and said, well, how about legislation that just funds the IRS? But this is one audit of one president per year. This has nothing to do with the IRS's budget. Just last week, the IRS's budget was increased by $650 million. I think it's like $12.5 billion budget now. That has nothing to do with one audit. They've audited millions of people. It's just not connected in any way to seeing President Trump's individual tax returns. And I think perhaps the easiest reason why this fails heightened scrutiny and the most important point I want to make is that the committee has asked for the president's audit files for audits that are still open and ongoing. If they want to understand how presidents are audited, they haven't even requested a single audit. They're not even over yet. So there's nothing that they would be able to understand about how the audit went, whether the president was treated fairly or unfairly, because they're still ongoing. And in fact, by injecting itself into ongoing audits, the committee is corrupting any usefulness of the data it would get. It is interfering with the audit now, so they can't measure how the IRS goes about this job neutrally and normally because it's itself injecting itself into the audit process. And the committee also says, I guess another fatal flaw with this is that the committee claims to be studying the presidential audit program, but it's requested tax returns and audit files for entities and years that are not subject to the presidential audit program. It's asked for not just President Trump's tax returns and audit files, but his businesses, which we've alleged no one disputes and the IRS knows better. Those businesses are not subject to the presidential audit process because they're not presidents. They have nothing to do with the stated rationale. The committee has also asked for a year before and a year after President Trump was in office. The presidential audit program doesn't apply when you're not in office. And the only explanation that they give is that, well, sometimes audits go back further to get years before someone was in office. But one, there's no evidence that these audits went back further. Two, that doesn't explain why you would go forward in the future to 2020. They're not going to go forward. They go backwards. And three, this logic doesn't have any limit. There's no evidence yet that they've gone back to further years. And so this would allow them to go back as far as they want. It's an unlimited circular form of logic that shouldn't satisfy heightened scrutiny. And even if it did, even if you thought they needed a particular audit of a particular taxpayer, which is what they say in their request. We've alleged and no one's disputed because it's true that the audit of the president is no different than the audit of any other person, except for the fact that the IRS has no discretion to start. But once it starts, it proceeds as if as if as if he's any other taxpayer. So if you're worried that the IRS is overburdened by auditing wealthy people, you could get the tax returns and audits of any wealthy person. And you could study that. Since the whole protective scheme of non-disclosure of tax information is a statutory creature. Couldn't Congress pass a law that just said the IRS can disclose the information or repeal what it says they can't? Couldn't Congress do that? We think that law would be unconstitutional as applied to the president. No, no, no, no, no, no, no, no, no. It had nothing to do with the president. Let's forget about the president for a moment. Couldn't Congress just pass a law that says the information the IRS says is not proven or rather repeals statute that says it has to be kept secret? Couldn't Congress do that? Perhaps it could, Justice Sattell. But I don't think that changes the answer in our case because for a few reasons. One is that the committee under heightened scrutiny has to say that's what it's doing. And it hasn't said that. And I think for good reason. Judge Mehta in the Mazars case said that kind of rationale can't possibly justify heightened scrutiny because what you're saying is that we want to get and disclose President Trump's tax returns in order to study whether tax returns should be disclosed. It's circular. You could use that to get any information from any president about anything. Doesn't survive. And, and, and, more importantly, besides the, the constitutional issue. Yeah, as I said that that that rationale has not been given by the committee because I think they understand the circularity problem with it. And nor would that rationale justify for example why are they asking for the audit files, I don't think there's any anybody who's asked for precise at that information. So if I could just continue I'll just stick I'll just stick on the topic of heightened scrutiny because I do think it's the easiest place where our where we've stated a plausible claim that's not subject to a motion to dismiss. One, one thing we've stressed is that the reason that this request is overbroad and overly burdensome, is that there's no promise from the committee that our tax returns will be kept confidential, or will be reviewed in camera. Instead, we've alleged plausibly that the goal here is to immediately publicly expose and release President Trump's tax returns. Mazars opinion says the committee has to consider excessive burdens and excessive breath. We think that that type of disclosure would be excessive and I think it's important history speaks here to your honors the, there's only two compulsory process, only, only two, two times the compulsory process has been issued against a former president. And that's what former President Adams and Tyler before before former President Trump, both times, the committee guaranteed that their information would stay confidential and Mazars itself talks about a situation with President Reagan, where the accommodation was reached for his information we kept confidential, we should get the same protections. So, so, if, if, if we were to trial court ordered compliance, but no disclosure absent court order. It would pass the Mazars test. We have other arguments judge Wilkins but I think it would. I think the failure to give confidentiality fails the Mazars test, but I do think the question here is whether we stated a plausible claim if you believe that there's a violation of Mazars here potentially because of the lack of confidentiality, then the judgment should be motion to dismiss denied, and we should go on to the next stage of the case. All right, any further questions. All right, Mr Norris will give you a couple minutes and reply. Mr. Letter. Good morning. Good morning, Judge Henderson and members of the court. I do want to. I have notes here on the points that my friend Mr Norris made and I do want to address them I want to start out with a little bit of an introduction though. But first let me introduce Stacey fossil who is with my office and general counsel, and Isabella more from the Ways and Means Committee. And by the way, as Mr Norris said he and I have been arguing about any number of things recently and he and I just have to come up with another place that we can meet, other than opposing each other in court. I suspect we could be good friends. Judge McFadden steadfastly adhered to considerable Supreme Court precedent developed over a number of decades on how to deal with how the courts should deal with congressional investigations. And so that law is well established. And Judge McFadden wrote a absolutely splendid opinion that goes through that and applies that law. The, the problem here is, unlike I think probably most of what President Trump's view would be I suspect in general, President Trump favored a limited role for the judiciary here. He just, he doesn't like the test. He doesn't like what the Supreme Court has done over the decades, and so he wants this court to reject what Judge McFadden did and this court to suddenly go into a whole different mode and, and actively supervise a congressional investigation. As we know, the Supreme Court has said, No, that is, that's not appropriate. Just to read one, I'll quote very briefly from Judge McFadden's opinion which I think sums things up here is, quote, the problem for interveners is the low bar that the committee must clear. Even at this stage, courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province. It is not a court's function to invalidate a congressional investigation that serves a legislative purpose. So, getting to the specifics of what Mr. Norris was saying. First he says well this is the wrong posture to motion to dismiss. Well, easy answer to that, both Eastland and Tenney were in motion in a dismissed posture the Supreme Court went ahead and and ruled for Congress in both of those. The judge and tell us a question about this, Mr. Norris says, you know, he's made his, his colleagues have made allegations about what the purpose is here, what Chairman Neal's purpose is here. Well, Chairman Neal explained his purpose he did it in an extremely formal document that Mr Norris has. He said to the Treasury Department the IRS here is what I'm seeking. And here's why I'm seeking it. That's it. There it is, there is the purpose. Just until asked, you know, is it possible, there could be, you know, mixed or additional purposes and of course it's just until his question revealed he knows yes, there could be but guess what the Supreme Court has made clear on various occasions. And, and, you know, in particular I think it was the, the Watkins case the fact that there are additional purposes allegations of additional purpose. They're relevant. Maybe that would be relevant in some other case, but not, not because of separation of powers not how this court looks at congressional investigations. So, um, Mr Norris can allege, well that's not really the right the purpose here etc but as Judge Wilkins his question revealed. Well, what are you going to do you're going to take a deposition of Chairman Neal. Clearly not can't do that and it wouldn't. In none of these cases with the Supreme Court have stood for that. So the fact that this is at a dismissal stage and that Mr Norris has made allegations is actually completely and totally irrelevant under the test that the Supreme Court has set down. He said, Well, we must come forward with evidence, I'm, I'm, I have to admit that I'm puzzled about that. What was the letter to the formal letter to the Treasury Department to IRS. It's not evidence. Mr Norris says, Well, there was that long meeting with the IRS want to know what happened there. We've made absolutely clear what happened there and it's, it's obvious because it's based on the law. The law is. It provides the tax return information may not be disclosed. It's a felony to disclose it, unless it fits within one of the exceptions. So with the IRS, when we said we want to find out about the program. You know how many times has been applied to whom, you know, etc. And the answer was, we can't tell you it's tax return information there's only been a limited number of presidents been subject to the program. And so it would reveal tax return information about them so we want, we cannot tell you anything about the program. Now we said, Well, but you can because under 6301 F3 you, you can. And they said, Well, that that's what's unclear. We don't know if, if that that applies here and so because it's tax return information, we will give you nothing. So the, the answer from the IRS is the same as what is before this court 6103 F, how does that apply. And so, further sit down with IRS can only be meaningful. If IRS says oh yes we now understand that this, the exception applies and therefore we can talk to you fully. Here's what happened in the audit of President Carter, here's what happened in the audit of President Clinton etc. But as of now, the IRS position is, we cannot share that tax return information with you. So that's what happened. It was, we learned absolutely nothing of value. There's complete frustration, because of IRS is understanding of the law which obviously Mr Norris agrees with. So he can hardly complain that we learn nothing and it would be very odd. It's very odd for him to say, we'll go back and ask them again maybe ask them nicer. And they'll tell you everything. I didn't understand him to suggest that yes. Sorry. I got carried away. Go ahead. On the GSA test. I agree I think Mr Norris accurately answered Justin tells question about what the other test is under czars and GSA, but there was something that was very much wrong, which is Mr Norris confused, the burden on the presidency, with the burden on former President Trump, personally. And that's a next judgment fad and recognize that that's a very key point. There's no doubt that this request is for the records of a former president. And it was ours when you first requested them. And this constitutional controversy began. He was a sitting president. That is exactly right. Judge Henderson. When then Congress, there was a turnover in Congress and Chairman Neil issued a new request, as Judge McFadden correctly said that superseded the prior request. And there is no doubt that at that point, Mr Trump was no longer the president and reading, whether, whether the information sought has remained the same, the controversy between the two branches has remained the same. We have a situation. It involves both a sitting president and a former president. And for all we know if this case drags out, he could be a sitting president again. Judge Henderson, I strongly disagree. The controversy does not now involve a sitting president. The case before Judge McFadden and the case before you absolutely clearly involves a former president. And when you read them as ours opinion, I know very well, you know, argue that in both this court and the Supreme Court and in the district court. The Supreme Court's opinion makes very clear that it's about the relationship between a sitting president, which is not surprising that's what the case was about a sitting president, and a sitting Congress. Did you argue, did you argue in Mays ours. That was decided while he was a sitting president by the Supreme Court it came back. He's now a former president. Did you argue this dichotomy, because it's very similar in Mays ours. They want the same information. When he was sitting president, as they do. Former President, which is the same case here. Yes, Your Honor, and before the district court we argued that there's made a rule that he, he ruled that when you know will colloquially refer to I think he used this term to Miss ours light. And so he said that applied and then he found that the Congress wasn't at the house was entitled to. Actually, I think most of the information being sought that then was appealed to the DC circuit I argued that case several months ago before judges. Trina the sun. Judge Rogers and Judge Jackson, obviously, I assume Judge Jackson will not be ruling on that case anymore. So we're we're awaiting a decision from that panel. What I'm asking you is do you make, did you make the same argument about recognizing that you were dealing with both this sitting president, and a former president. And what if any difference to that me. Yes, I'm talking specifically about the separation of powers burden. Yeah, exactly. Exactly are we made the exact same argument we said was ours case. At the time we argued it on remand did not involve a sitting president anymore with we made the exact same argument. And then we argue that and Judge made as I say. In fact, I just made I think accepted that he said nevertheless that Miss ours could apply in certain ways, but it was absolutely clear that we were dealing solely with the records of a former president. And as I say, we argued that before this court, several months ago, and are awaiting a decision but. And again, it can't that there is no doubt that we are only talking about the records of a former president we have only one president at a time. Chairman Neal's request that is before this court was made after Mr. Trump was no longer the president. And by the way, you know, the executive branch agrees. The executive branch has taken the position that it must provide the documents because there is no separation of powers are serious separation of powers argument here anymore. There is no clash between the executive and legislative branches that the president, the only president takes that position now as we know, Nixon versus GSA says that a former president may raise certain issues executive privilege, for example, may raise now as we know, Nixon versus GSA. The court overrode those in significantly influenced clearly by the fact that the current presidents, first it had been for President Ford who signed the legislation that President Carter who was defending it. So, the sitting president disagree with the former president. And here too as I say, we, we are only dealing with the records of a former president, again, there can't be any factual doubt about that. And whether he may or may not be present again, again, has nothing to do with the controversy before this court today. And you also feel, excuse me, the fact that he was a sitting president when this controversy began has no relevance is that what you're saying. Absolutely, Your Honor, and you know we know that from, as we pointed out, you know, Mr Norris has argued, oh no no no you still, you look at, at that you don't look at what happened after well first of all again, just make fat and recognize we're dealing with the current request, which superseded the prior one. But second, this court on bonk as I recall in, I guess with Senate Select Committee took into account actual facts. Okay, I think you've acknowledged and that raises another question. Do we know on the record why you decided to go the request route, rather than the subpoena route. Your Honor, the originally Chairman Neal issued issued a subpoena, and he issued a sent a letter under 6103 f it was built in suspenders. The. When the, when the Congress changed in the current Congress. Manil has sent the new request under 6103 f. There is no pending subpoena right now. The decision was made. Chairman Neal consulted very closely with attorneys, and the decision was that we move forward with 6103, and so that so this case only involves the statutory requests at this point, there is no pending subpoena. At this point. The. Does anyone have any further questions. Judge Wilkins judge Intel. No. All right. Thank you, Mr letter. Mr Zenda. Thank you, Your Honor and may please the court, Jerry since that appearing on behalf of the Treasury Department. Happy to field Your Honor's questions as we lay out in our brief, we believe the committee's requests here is a valid in the constitutional requirements, and therefore section 6103 F required the Secretary of Treasury to comply with it. The committee's 2021 request lays out in detail both the legislative purposes underlying the request as well as explains why the former president's records are particular interest to the committee, given that this is not a case involving executive privilege or documents subject to executive privilege or in does not request the records of a sitting president. The committee's request satisfies constitutional requirements in the district court correctly affirmed the request. I think it has already been discussed and mentioned here the allegations of improper purpose are strikingly similar to allegations the Supreme Court has heard time and again, and along the line of precedent, dating back to the brain case, and the Supreme Court has not been sufficient to vitiate a congressional inquiry. And on that score so here again, the committee's stated purposes are are objectively valid, their interest in the presidential auto program and the IRS's conduct within that program is objectively supported by their request and therefore, again, because we're not dealing with a case that concerns executive privilege or the documents of a sitting president that it is sufficient to meet constitutional requirements. Yeah. Again, I'm happy to answer further questions we believe the plaintiffs other constitutional claims are also without merit those directed at Treasury this as a district court found this statute is constitutional here, and certainly in the vast majority of its applications and therefore is not officially invalid. And with respect to plaintiff First Amendment claims, because the statute required the secretary to comply with the request. The motive in doing so is irrelevant and plaintiff, even though we of course do not believe any improper motive can be properly attributed to the secretary here. In any event, the motive is irrelevant, and the First Amendment claim fails. I haven't touched briefly judge and tell asked about the appropriate standard that applies here, I think, in general, the framework that courts apply when approaching these types of congressional requests for executive executive materials is a balancing task that way typically waste the burden on the executive of disclosing the particular information that issued to Congress against congressional need for that information in where we have cases where the documents are particularly sensitive such as executive privilege cases that Congress must meet meet a particularly high showing the bizarre test is in many ways an application, it says when documents of a sitting president are requested a higher showing is likewise required. Here, though, we are again talking about documents of the former president. And so therefore the separation of powers concerns are far attenuated in presumably the showing Congress, we need to make would be lesser. And here we feel that the statements that the committee has completely out the window when the president is no longer sitting or is it simply applied with less rigidity is, doesn't it seem that a president in sitting president can be invaded in his privileges by knowing that once he goes out the door. The protection isn't there anymore isn't there some possibility of interference with separation of powers, even with respect to a non sitting president because of its potential effect on the actions of the sitting president. Yes, Your Honor, we agree with that. And certainly if we were talking about privilege materials, there'd be great, even greater concerns about with respect to revealing that information after presidency because it could affect a sitting president. But in this case, they're far attenuated we're talking about the records of private individual, not material subject to privilege in they don't implicate the same separation of powers concerns that would exist in other context. Your Honor, I'm happy to answer any further questions you may have. No questions. All right, thank you. Thank you, Your Honor. Forgive me for that interruption I thought I had turned that phone off. Mr Norris. Thank you. A few points. Wait a minute, I have a question. We have been all wound up in who the president is at the time, who's the chairman of this committee at the time, what the Treasury Department. Who's in the executive branch, including the Treasury Department, and the IRS. And we've got to look at this case as executive branch versus legislative branch as institutions. And I think the language and maze ours. First of all, I question will be this. Assuming that Judge McFadden misapplied precedent that he should have applied maze ours. When you look at what the Supreme Court said and maze ours about the fourth burden, that is the separation of powers burden. It said that burdens imposed by a congressional subpoena and of course we have a request here. Interestingly, should be carefully scrutinized for they stem from a rival political branch that has two things going and on an ongoing relationship with the president and that's why that's no longer the case but that's why I'm interested in the fact that he was a sitting president when this whole thing began. And then the second element is incentives to use subpoenas for institutional advantage. Now, again, we don't have a subpoena, we have the request, but that second power that the rival political branch has survives the fact that the president is now a former president. And it talks in terms of institutional advantage that's what makes me think, you know, we've got to look at this, not musical chairs who's changing who's withdrawing who's doing who's leaving office and so forth. So, assuming we think maze ours is the right precedent. What difference, if any, will that make. If it were to be. Thank you, Judge Henderson, and we do think you should at least remand because Judge McFadden didn't say we would lose under maze ours and a lot of his opinion suggests we might very well win under that heightened standard. And I think you've hit it right on the head. Even the reason it's important that this request was made, while President Trump is president is because everyone agrees that that original request would have had to have satisfied a rigorous version of the maze ours test which is a heightened scrutiny test, precisely because courts should be skeptical when Congress is going after its rival courts are suspicious, they don't give Congress the normal deferential presumptions they've in fact come in and act as a neutral referee. So, if this was suspicious when it was issued, there's nothing about January of 2021 that eliminated the suspicious nature of the request the request remained exactly the same. And as Justin tell pointed out, there is a chilling effect, even when you target a former president. Never in history has Congress ever issued this kind of type of demand to a former president so that that lack of history ought to mean something it suggests that Congress has long thought this is impermissible. And one way or another, they wanted all kinds of things in the Nixon administration. They may not have had precisely this posture but that's where the presidential papers act came from essentially wasn't it fair enough there was a statute there at issue just until I'll say this is even more unique and that they are targeting the personal you have to look at the precedent, that's going to be set by approving this request. And the precedent that's going to be set is that once a president leaves office it's open season, you can get every detail of his financial life, his businesses, his private taxpayer information which is protected by federal law, and don't worry, even if he has ongoing that being a big deal, but it is a big deal it's happening here we still have ongoing subpoenas for his accounting records, his banking records, President Trump is subject to an onslaught from this house and they've continued to pursue it. After he left office, it is a highly burdensome request that fails heightened scrutiny. All right, if there are no questions, then thank you gentlemen. Thank you, Kirk if you give us an adjournment.
judges: Henderson, Wilkins, Sentelle